VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
COTY R. MONTAG
Deputy Chief
CA Bar No. 255703
BURTIS M. DOUGHERTY
DC Bar No. 225003
E-mail: Burtis.M.Dougherty@usdoj.gov
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. - NWB
Washington, DC 20530
Tel: (202) 514-4713
Fax: (202) 514-1116

MELINDA HAAG
United States Attorney
ALEX G. TSE
Chief, Civil Division
MELANIE L. PROCTOR
Assistant United States Attorney
CA Bar No. 228971
E-mail: Melanie.Proctor@usdoj.gov
450 Golden Gate Avenue
San Francisco, CA 94102
Tel: (415) 436-6730
Fax: (415) 436-7200
Attorneys for Plaintiff
United States of America

PATRICE ALEXANDER FICKLIN
Fair Lending Director
ANTHONY ALEXIS
Enforcement Director
REBECCA J.K. GELFOND
Deputy Fair Lending Director
JEFFREY P. EHRLICH
Deputy Enforcement Director
VINCENT HERMAN
Senior Fair Lending Enforcement Counsel
E-mail: Vincent.Herman@cfpb.gov
D.C. Bar No. 974596
Office of Fair Lending and Equal Opportunity
BENJAMIN KONOP
Enforcement Attorney
Bar No. 0073458
E-mail:  Benjamin.Konop@cfpb.gov
Office of Enforcement
Consumer Financial Protection Bureau
1700 G Street, NW

Washington, DC 20552
Tel:  202-435-9599
Attorneys for Plaintiff
Consumer Financial Protection Bureau

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 15-2373 |
| v. | ) ) | [PROPOSED] CONSENT ORDER |
| PROVIDENT FUNDING ASSOCIATES, L.P., | ) ) ) | |
| Defendant. | ) ) | |

This Consent Order is submitted jointly by the parties for the approval of and entry by the Court, simultaneously with the filing of the Complaint of the United States and the Consumer Financial Protection Bureau ("CFPB") (collectively, "the Plaintiffs") in this matter.  This Consent Order resolves the Plaintiffs' claims that Defendant, Provident Funding Associates, L.P. ("Provident" or "the lender"), has engaged in a pattern or practice of lending discrimination in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA"), by allowing its wholesale mortgage brokers to charge African-American and Hispanic borrowers higher broker fees for residential real estate-related loans than non-Hispanic white ("white") borrowers.

There has been no factual finding or adjudication with respect to any matter alleged by Plaintiffs.  The parties have entered into this agreed Order to resolve voluntarily the claims asserted by Plaintiffs in order to avoid the risks and burdens of litigation.

## I.   BACKGROUND

Provident is a nationwide wholesale mortgage lender established in 1992 and headquartered in San Bruno, California.  Currently, Provident has over 50 offices nationwide and is licensed to originate loans in 25 states.  At various times in the past, it has also been licensed to do business in numerous

other states and the District of Columbia.  Provident is the second largest private mortgage company and the fourteenth-largest wholesale mortgage lender in the country.  The CFPB has supervisory authority over Provident.

Plaintiffs' Complaint alleges that from as early as 2006 to at least 2011, Provident originated wholesale loans by establishing a base or par rate for each of the types of loans it offered with specific loan terms for an applicant with specified credit characteristics.  Provident allegedly accounted for numerous objective credit-related characteristics of applicants by setting a variety of par rates for each of its different loan products.  These par rates reflected its assessment of individual applicant creditworthiness, as well as the current market rate of interest and the price Provident could obtain for the sale of any such loans to investors.  Provident issued par rate sheets, as frequently as several times each business day, to brokers.  The rate sheets listed the par rates based on the loan terms and a borrower's credit characteristics.  Provident also published the yield spread premium ("YSP") it would pay the broker when the broker submitted a loan application that had an interest rate that exceeded the par rate and Provident subsequently originated the loan.  The Complaint alleges that Provident made the credit decision and had the sole and absolute discretion to approve or reject any application submitted to it by a broker.

Mortgage brokers who supplied Provident with wholesale loans for origination were compensated in two ways: through direct fees paid by the borrower to the broker and/or through YSPs from Provident, collectively referred to as "total broker fees."  The Complaint alleges that in pricing its wholesale loans, Provident permitted mortgage brokers to exercise subjective, unguided discretion in setting the amount of total broker fees charged to individual borrowers, unrelated to an applicant's credit risk characteristics or loan product features.  From at least 2006 to at least 2011, brokers who submitted loans to Provident for origination were at liberty to price a loan application at any interest rate above the par rate and charge any amount of direct fees, as long as the total broker fees did not exceed Provident's maximum broker compensation caps.  These interest rates determined the amount of YSP Provident would pay and were separate from and not controlled by credit risk factors and loan characteristics already reflected in the rate sheet prices.  Plaintiffs also allege that Provident reviewed

1   the total broker fees that brokers charged to borrowers in the loans submitted to Provident for funding

2   and had the authority to accept or reject them.

3        Plaintiffs contend that from as early as 2006 through at least 2011, Provident, through

4   wholesale mortgage brokers, charged thousands of African-American and Hispanic wholesale

5   borrowers higher total broker fees than white borrowers for home mortgage loans, not based on their

6   creditworthiness or other objective criteria related to borrower risk and loan characteristics, but

7   because of their race or national origin.  The Complaint alleges that these disparities resulted from the

8   implementation and operation of Provident's policies that:  (a) allowed mortgage brokers subjective

9   and unguided discretion in setting their compensation for wholesale loans unrelated to borrower credit

10  risk characteristics and the terms of the loan that it then incorporated into the terms and conditions of

11  the loans it originated; (b) did not require mortgage brokers to justify or document the reasons for the

12  amount of total broker fees not based on borrower risk; (c) failed to adequately monitor for or remedy

13  the effects of racial and national origin disparities in those total broker fees; and (d) created a financial

14  incentive for mortgage brokers to charge higher interest rates to borrowers by its YSP policy.

15  Plaintiffs allege that these policies and practices were not justified by the necessity to achieve one or

16  more substantial, legitimate, nondiscriminatory business interests under the FHA or its regulations, 24

17  C.F.R. §100.5, or a legitimate business need under the ECOA or Regulation B of the ECOA, 12 C.F.R.

18  pt. 1002.  The Complaint alleges that as a result of Provident's practices, thousands of African-

19  American and Hispanic borrowers paid, on average, hundreds of dollars more for a Provident loan on

20  the basis of their race or national origin, in violation of the FHA and ECOA.

21                    **II.    POSITION OF PROVIDENT**

22       Provident asserts that at all times it conducted its lending in compliance with the fair lending

23  laws and in a non-discriminatory manner.  Provident maintains that any of the differences in pricing, as

24  alleged by Plaintiffs, were attributable to legitimate, non-discriminatory factors.

25       Plaintiffs' claim focuses on wholesale loans and arises from the fees that independent mortgage

26  brokers charged their customers.  Provident asserts that these fees were negotiated independently

27  between the mortgage brokers and their clients.  Provident asserts that competitive market conditions

28  required it to allow independent mortgage brokers to negotiate their compensation directly with their

Consent Order              - 4 -

borrower-customers.  Provident asserts that it did not receive any of the fees charged by the brokers as part of the price negotiated directly between the brokers and the borrower.  Therefore, Provident asserts that allowing independent mortgage brokers to set their own compensation was justifiable by a legitimate business purpose.

Provident never had a high concentration of loans from a small group of mortgage brokers.  Rather, it did business with thousands of independent mortgage brokers, who were constantly changing and who were not employees of Provident.  The independent mortgage brokers had a non-exclusive contractual relationship with Provident.  Provident asserts that for the protection of borrowers, it imposed and enforced a low cap on total broker compensation.

Provident asserts that prior to significant regulatory changes in 2010 and 2011 that changed how mortgage brokers charged borrowers for their services, the imposition of a cap on the maximum amount of compensation a broker could charge was the primary mechanism for protecting borrowers from overreaching by its own mortgage brokers, including discriminatory fees.

Provident revised how it compensated mortgage brokers in response to regulatory developments in 2010 and 2011.  It continues to impose a low cap on total broker compensation.  Its outside consultant regularly performs a statistical analysis of broker compensation to identify any apparent compensation differences.  This is done under the supervision of Provident's Chief Compliance Officer, who is part of its enhanced compliance management systems.  Provident maintains that its practice of permitting independent mortgage brokers to set their own compensation within the cap imposed by Provident was and is justified by business necessity.

## III.    REMEDIAL ORDER

### A.  General Prohibitory Injunction

1.      Provident, including all of its officers, employees, agents, representatives, assignees, and all those in active concert or participation with any of them, is hereby enjoined from engaging in any act or practice that discriminates against residential mortgagors on the basis of race or national origin in any aspect of the assessment of total broker fees in a residential real estate-related transaction in violation of the FHA, or in any aspect of a credit transaction in violation of ECOA or Regulation B, 12 C.F.R. pt. 1002.  This prohibition includes, but is not limited to the adoption, performance, or

1  implementation of any policy, practice, or act that results in race or national origin discrimination

2  against residential mortgagors in the assessment of total broker fees.

3         2.      This Order requires that Provident take actions as set forth below to remedy its alleged

4  discrimination.  Provident retains the discretion to take any additional actions that it believes are

5  appropriate to achieve the goals of this Order.  The effective date of this Order shall be the date on

6  which it is entered by the Court.

7         **B.     Action Plan**

8         3.      For the duration of this Consent Order, Provident shall continue to have a Compliance

9  Officer or Compliance Committee to be responsible for monitoring and coordinating Provident's

10  adherence to the provisions of this Consent Order.  Provident shall identify in writing to Plaintiffs the

11  name of the Compliance Officer or each member of its Compliance Committee within fourteen (14)

12  days of the effective date of this Order.  The Compliance Officer or each of the Committee members

13  shall be at a senior management level within Provident.  In the event of any change in the Compliance

14  Officer or Committee, Provident shall submit the name of the new Compliance Officer or Committee

15  member(s) to Plaintiffs within fourteen (14) days.

16         4.      Within thirty (30) days of the effective date of this Order, Provident shall submit to

17  Plaintiffs[1] a plan setting forth the actions that are necessary and appropriate to achieve compliance

18  with this Order ("Action Plan"), including but not limited to setting forth proposed broker

19  compensation policies and procedures and a proposed Monitoring Program, as set forth below.  The

20  Action Plan shall specify timelines for completion of each of the requirements of this Order.  The

21

22  _____

23  [1] Any material required to be submitted to the Plaintiffs shall be delivered as follows, unless otherwise specified in this Order.  For the United States, delivery shall be by private (non-USPS) overnight delivery addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street, NW, Suite 7200, Washington, DC 20006, Attn. DJ #188-11-19.  For the CFPB, delivery shall be by private (non-USPS) overnight delivery addressed as follows: Assistant Director, Office of Fair Lending and Equal Opportunity, c/o Vincent Herman, Consumer Financial Protection Bureau, 1625 Eye Street, NW, ATTN: Office of Enforcement, Washington, DC 20552.  The parties may also agree to delivery either electronically or by hand-delivery to the above address by courier.

24

25

26

27

28

timelines in the Action Plan shall be consistent with all deadlines in this Order, unless a modification is agreed to in writing by Plaintiffs.

5.     If, after review, Plaintiffs determine that it is necessary for Provident to revise the Action Plan, Plaintiffs will notify Provident of these proposed revisions.  Provident shall make revisions and resubmit the Action Plan to Plaintiffs within fourteen (14) days of receipt of such notice. Plaintiffs will notify Provident when they determine there are no further revisions necessary to the Action Plan.

6.     Upon notification that Plaintiffs have no further revisions to the Action Plan, Provident shall promptly implement and adhere to the steps, recommendations, deadlines, and timeframes set forth in the Action Plan.

7.     The Action Plan shall require that Provident shall continue to maintain a complaint resolution program to address consumer complaints alleging discrimination regarding loans it originates or denies.  Documentation regarding this complaint resolution program, including documentation of individual complaints and resolutions, if any, shall be produced to the Plaintiffs on a semi-annual basis in the reports referenced in Paragraph 36.

8.     Any material proposed changes to the approved Action Plan, including changes to Provident's broker compensation policies and procedures, during the term of this Order shall be submitted in writing to Plaintiffs for review.  If Plaintiffs determine that it is necessary for Provident to revise the changes to the Action Plan, Provident shall make revisions and resubmit the Action Plan to Plaintiffs within fourteen (14) days of receipt of such notice.  Provident shall not implement the changes or deviations until Plaintiffs provide notice to Provident that no further revisions are necessary or until any dispute is resolved by this Court as provided in Paragraph 40.

### C.     Broker Compensation Policies and Procedures

9.     Provident has provided to Plaintiffs its current broker compensation policy, which, in summary, does not allow discretion in borrower- or lender-paid broker compensation because individual brokers are unable to charge or collect different amounts of fees from different borrowers on a loan-by-loan basis.  Provident's current policy provides that: (a) each broker shall select its compensation level periodically as a percentage of loan amount, up to a maximum of 2% or $15,000;

(b) each broker shall charge the percentage it has selected to each loan application that it submits to Provident during the applicable period; and (c) no broker may charge or collect any other fee in connection with the origination of a Provident loan.  Unless modified consistent with this Order, Provident shall continue to have in place a non-discretionary broker compensation policy, as described in this Paragraph, subject to change in the maximum percentage cap or dollar limit to be applied for all brokers, in which case Provident shall notify Plaintiffs upon making the change.

10.     For the duration of this Order, Provident shall continue to have in place, as part of its broker compensation policy, specific race- and national origin-neutral standards for the assessment by the broker of total broker fees on residential real-estate related loans that Provident underwrites, originates, or funds that are designed to avoid unlawful discrimination by the lender and/or the mortgage broker.  The broker compensation policy shall also require that written documentation of the amount of such fees, whether lender-paid or borrower-paid, be among the application documents submitted to Provident and be maintained in each loan file.  These requirements shall be made part of any broker agreement between a mortgage broker and Provident and shall be incorporated into the lender's current proprietary loan processing system or any future processing system.  If Provident modifies its broker compensation policy during the term of this Order, additional written documentation supporting the amount of such fees may be required.

11.     Provident's broker compensation policy shall continue to require brokers to make the following disclosures to mortgage loan applicants, to the extent not inconsistent with applicable law: (a) the full amount of any broker compensation, stated separately for lender-paid or borrower-paid fees, and that such compensation may, or may not, as appropriate, be negotiable between the broker and borrower; and (b) a notice of non-discrimination that provides substantially the same information as is contained in Appendix A.  Such disclosures shall continue to be in writing, signed by the broker and the borrower, and submitted by the broker to be made part of the loan file maintained by Provident.  This disclosure shall be made as early as practicable but not later than seven (7) days prior to the closing of the loan.  The policy shall further provide for at least annual notice to all brokers who submit applications to Provident or originate loans through or in its name, of the brokers' obligation to comply with the FHA and ECOA and articulating the brokers' obligation to charge compensation in a

non-discriminatory manner, including in their exercise of discretion to set total broker fees when such discretion is permitted.

12.     Provident's loan processing system shall include validations to be performed to ensure compliance with the requirements of Paragraphs 9, 10, and 11.  Provident's policy shall require designated employees under management supervision to review for compliance with the requirements of Paragraphs 9, 10, and 11 and certify compliance therewith as part of its monthly post-funding Quality Control review.  Such certification shall be maintained in Provident's loan processing system. Provident's policy shall not permit the processing of a loan application or the closing/funding of a loan submitted by a broker unless the broker has fully complied with the requirements of Paragraphs 9, 10, and 11.

13.     Provident's broker compensation policy shall provide that Provident will use its best efforts to require the mortgage brokers who contract with it to post and prominently display in each location where applications for its loans are received a notice of non-discrimination, a sample of which is attached as Appendix A.

**D.     Monitoring Program**

14.     For the term of this Order, Provident shall continue to have in place a monitoring program designed to ensure compliance with this Order.  This program shall monitor Provident's wholesale loans for potential disparities based on race and national origin with respect to compensation received by its wholesale mortgage brokers.  The program shall also include portfolio-wide analyses designed to detect statistically significant disparities[2] in total broker fees based on race and national origin with respect to Provident's wholesale loans on a nationwide level on a quarterly and annual basis.  In addition, the program shall also include an analysis on a semi-annual and annual basis designed to detect such disparities in selected geographic areas and on a broker-by-broker basis, with the criteria used to select geographic areas and individual brokers to be agreed upon by the parties in

---

[2] Statistical significance is a measure of probability that an observed outcome would not have occurred by chance.  As used in this Consent Order, an outcome is statistically significant if the probability that it could have occurred by chance is less than 5%.

1 advance of each semi-annual analysis.  The analyses conducted by Provident pursuant to this

2 Paragraph shall utilize the same methods and be calculated without controls, as performed by Plaintiffs

3 and described in Paragraph 20 of the Complaint, unless Plaintiffs approve the use of additional controls

4 or methodological changes proposed by Provident.  Nothing in this Order precludes Provident from

5 conducting additional compliance-related analyses.

6   15. In the event that any review or analysis performed pursuant to this Order discloses

7 statistically significant broker fee disparities between African-American or Hispanic and white

8 borrowers, Provident shall attempt to determine the reason(s) for those disparities.  It shall promptly

9 take corrective action to address disparities that are attributable to a policy or practice of Provident –

10 including, but not limited to, those identified in the Complaint – and not necessary to achieve one or

11 more of its substantial, legitimate, nondiscriminatory business interests or a legitimate business need.

12   16. Corrective action taken pursuant to Paragraph 15 shall include, as warranted, financial

13 remediation for borrowers; further modifications to Provident's broker compensation policies and/or

14 monitoring programs; requiring further fair lending and/or compliance education or training for its

15 employees or brokers; modification of the terms of or termination of broker relationships; or any other

16 action as deemed appropriate under the circumstances.  Provident shall maintain documentation of all

17 corrective actions taken under this Paragraph, or the reason(s) why it took no corrective action.

18   17. In the event that any review or analysis performed pursuant to Paragraph 14 discloses

19 statistically significant disparities in total broker fees between African-American or Hispanic and white

20 borrowers for a particular broker, Provident shall require the broker to provide promptly, in writing,

21 the non-discriminatory reason(s) for those disparities that are necessary to achieve (a) one or more of

22 its substantial, legitimate, nondiscriminatory business interests and (b) a legitimate business need under

23 Regulation B of the ECOA.  12 C.F.R. pt. 1002.  If the broker does not provide a reasonable, non-race

24 or national origin-based explanation for the identified disparities, Provident shall use its best efforts,

25 including termination of its relationship with the broker, to require the broker to take prompt corrective

26 action, as described in Paragraph 15, to address the disparities.  Provident shall maintain

27 documentation of all corrective actions taken pursuant to this Paragraph, or the reason(s) why it took

28 no corrective action.

18.     Provident shall submit all such periodic analyses and remedial proposals to the Plaintiffs for their review within fifteen (15) days of their completion, and Plaintiffs may conduct alternative analyses.  If either Plaintiff raises any objections to Provident's determinations with respect to a finding or non-finding of pricing disparities or proposed remedial actions within thirty (30) days of their receipt, the parties shall meet and confer to try to resolve their differences.  If the parties are unable to come to an agreement regarding such objections, any party may bring the dispute to this Court for resolution pursuant to Paragraph 40.

**E.     Equal Credit Opportunity Training Program**

19.     For the duration of this Order, Provident shall continue to provide equal credit opportunity training to its management officials or employees who:  (a) have responsibility for interacting with mortgage brokers; (b) have responsibility for conducting fair lending compliance monitoring or for reviewing fair lending complaints; or (c) have responsibility for ensuring that mortgage brokers' compensation complies with Provident's policies and procedures as well as federal and state statutes and regulations.  During this training, Provident shall provide to each participant:  (a) access to a copy of this Order and the loan policies adopted pursuant to it; and (b) training on the terms of this Order, the loan policies adopted pursuant to it, the requirements of the FHA and ECOA, and his or her responsibilities under each.  The initial training shall be provided within sixty (60) days of the effective date of this Order, and, during the term of this Order, Provident shall provide annual training to covered employees, as described in this Paragraph, with respect to his or her responsibilities and obligations under the FHA, ECOA and this Order.  This training shall be provided by Provident or by a qualified independent third party selected by Provident and shall be presented to Plaintiffs for comment and review, with any impasse to be submitted to the Court for resolution pursuant to Paragraph 40.  Provident shall bear all costs and expenses of this training.

20.     Provident shall also provide equal credit opportunity training to each new management official or employee whose responsibilities include those described in Paragraph 19.  Each such new management official or employee shall be provided a copy of this Order and the policies required under this order, have any questions relating to them answered, and sign an acknowledgment form statement substantially in the form of Appendix B within ten (10) days of beginning his or her

1  employment in that position.  Within thirty (30) days of beginning his or her employment in that

2  position, each such employee shall receive the fair lending training described in Paragraph 19.

3       21.     Provident shall secure from each management official or employee receiving the

4  training a signed statement acknowledging that he or she has received a copy of this Order and the loan

5  policies required by this Order and has completed the training.  The signature of the acknowledgement

6  may be either manual or electronic, complying with the requirements of the E-Sign Act, 15 U.S.C. §

7  7001 *et seq.*  These statements shall be substantially in the form of Appendix B (Acknowledgment)

8  and Appendix C (Equal Credit Opportunity Training).

9       **F.**     **Satisfaction of Plaintiffs' Claims for Monetary Relief**

10       22.     Provident shall deposit in an interest-bearing escrow account the total sum of $9 million

11  to compensate for direct and indirect damages that aggrieved borrowers may have suffered as a result

12  of its alleged violations of the FHA and ECOA (the "Settlement Fund").  Title to this account shall be

13  in the name of "Provident Funding Associates, L.P. for the benefit of aggrieved borrowers pursuant to

14  Order of the Court in Civil Action No. [insert]."  Provident shall provide written verification of the

15  deposit to Plaintiffs within ten (10) days of the effective date of this Order.  Any interest that accrues

16  shall become part of the Settlement Fund and be utilized and disposed of as set forth herein.  Any

17  taxes, costs or other fees incurred by the Settlement Fund shall be paid by Provident directly into the

18  Fund.

19       23.     Within thirty (30) days of the effective date of this Order, Provident shall identify a

20  proposed Settlement Administrator ("Administrator") to Plaintiffs.  Provident shall confirm that

21  Plaintiffs do not object to its selection before executing a contract with the Administrator.  Within

22  thirty (30) days of an Administrator's selection, Provident shall, after confirming that Plaintiffs do not

23  object to its terms, execute a contract with the Administrator to conduct the activities set forth in the

24  following paragraphs.  Provident shall bear all reasonable costs and expenses of the Administrator.

25  The Administrator's contract shall require the Administrator to comply with the provisions of this

26  Order as applicable to it and shall require it to work cooperatively with Plaintiffs in the conduct of its

27  activities, including reporting regularly and providing all reasonably requested information to

28  Plaintiffs.  Provident shall allow the Administrator access to relevant mortgage loan files, borrower

contact information, and any other information necessary for the purpose of accomplishing its duties under this Order.  The contract shall further require the Administrator to comply with all confidentiality and privacy restrictions applicable to the party who supplies information and data to it.

24.     The Administrator's contract shall also require the Administrator, as part of its operations, to establish cost-free means for aggrieved borrowers to contact it, including an email address, a website, a toll-free telephone number, and means for persons with disabilities to communicate effectively, including TTY.  The Administrator's contract shall require the Administrator to provide live English and Spanish-speaking operators to speak to individual borrowers who call the toll-free number.  The Administrator's contract shall further require it to make all reasonable efforts to provide prompt, effective translation services including foreign language interpreters and translations for communications, both written and electronic, with aggrieved borrowers.

25.     In the event that Plaintiffs have reason to believe that the Administrator is not materially complying with the terms of its contract with Provident, the parties shall meet and confer for the purpose of mutually agreeing upon a course of action to effect the Administrator's material compliance with its contract.  In the event that the parties are unable to reach agreement, any party may present the matter to this Court for resolution.

26.     Plaintiffs may request from Provident any additional information or data they reasonably believe will assist them in identifying aggrieved borrowers, verifying their eligibility, and determining an amount of monetary damages for each.  Provident shall, within thirty (30) days of receipt of such request, supply such data or information, to the extent that it is within its control.  Such information and data shall be used by Plaintiffs only for the purposes of enforcing and implementing the Consent Order.  To the extent that the requested data and information is not within Provident's control, it shall, within thirty (30) days of receipt of such request, supply information in its control that identifies other parties that may have that data or information.  Plaintiffs shall, upon reasonable notice, be allowed access to the lender's records and files to verify the accuracy of the data provided and to otherwise identify persons entitled to payments from the Settlement Fund.

27.     Within thirty (30) days of the effective date of this Order, Provident may provide Plaintiffs with data, documentation, or other evidence regarding any clearly demonstrated borrower

1  fraud in connection with the origination of a loan that may make that aggrieved borrower ineligible for

2  compensation in this matter.  Plaintiffs will consider this information in finalizing the list of aggrieved

3  borrowers.

4        28.    Within ninety (90) days of the effective date of this Order or the receipt of additional

5  data or information from Provident pursuant to Paragraph 26 or 27, whichever is later, Plaintiffs shall

6  provide the Administrator the list of aggrieved borrowers eligible for compensation from the

7  Settlement Fund and an initial estimate of the amount each borrower will receive from the Settlement

8  Fund.  Pursuant to its contract, the Administrator shall make its best efforts, using all reasonable

9  methods regularly used by companies that administer litigation and government enforcement

10  settlement funds, to locate each identified aggrieved borrower and obtain such information as Plaintiffs

11  reasonably consider necessary to confirm their identities and eligibility.  The Administrator's contract

12  shall require it to complete this responsibility within a period of six (6) months from the date the

13  Plaintiffs provide the list, subject to an extension of time as provided by Paragraph 38.

14        29.    Plaintiffs shall determine the final amount each aggrieved borrower located by the

15  Administrator shall receive from the initial amount deposited into the Settlement Fund, together with

16  any accrued interest, no later than sixty (60) days after the Administrator's deadline for locating and

17  receiving the requested information from aggrieved borrowers has passed.  Plaintiffs shall then provide

18  the final compensation list to the Administrator.  The total amount paid to the identified aggrieved

19  borrowers shall not exceed the total amount of the Settlement Fund, including accrued interest.  No

20  individual may request a review by the Court, the Administrator, or any party of the final payment

21  amounts.

22        30.    Within thirty (30) days of receiving the final compensation list from Plaintiffs, the

23  Administrator shall deliver payments to those borrowers in the amounts determined by Plaintiffs as

24  described in Paragraph 29.  Given the specific facts and circumstances related to this action, including,

25  but not limited to, the age of the loans and the joint nature of this action between the two federal

26  agencies, Plaintiffs have agreed to require each identified aggrieved borrower to effectuate a mutually

27  agreeable release as a condition of payment under the Settlement Fund, in the form of Appendix D.

28

31.     The Administrator's payment responsibility may be discharged on a rolling basis with approval from Plaintiffs.  The Administrator's contract shall also require it to skip trace and attempt to redeliver any payment that is returned to the Administrator as undeliverable, or not deposited within six (6) months.

32.     The Administrator's contract shall require it to set forth reasonable deadlines for any other aspects of the administration of its contract, subject to approval of Plaintiffs, so that compensation is distributed and checks are presented for payment or become void prior to the date that is twenty-four (24) months from the date Plaintiffs provided the Administrator a list of aggrieved borrowers eligible for compensation from the Settlement Fund pursuant to Paragraph 28.

33.     If any money remains in the Settlement Fund, including accrued interest, twenty-four (24) months after the date the initial notifications are sent to borrowers deemed to be aggrieved by Plaintiffs, as described in Paragraph 28, and if Plaintiffs determine that distributing that remaining money to aggrieved persons is impracticable, the Administrator shall distribute those funds, following the process described below, to organization(s) that provide services including credit and housing counseling (including assistance in obtaining loan modification and preventing foreclosure); legal representation of borrowers seeking to obtain a loan modification or to prevent foreclosure; and financial literacy, and other related educational programs targeted at African-American and Hispanic borrowers.  Recipient(s) of such funds must not be related to Provident or any entity owned by Provident.  Before making a final selection of the qualified organization(s), Provident shall obtain a proposal from each organization on how it will use the funds consistent with the above-stated purposes, submit such proposal(s) to Plaintiffs, and consult with and confirm that they do not object to the proposal(s).  Any party may request modification of the proposal before approving the organization(s).  The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s).  Fund recipients shall be required to submit to the parties a detailed report on how these funds are utilized within one (1) year after the funds are distributed, and every year thereafter until the funds are exhausted.  They shall also be required to return the full amount of funds received for redistribution to the other organization(s) approved to receive funds in the event that they fail to submit such report(s).

34.     Provident shall not be entitled to a set-off, or any other reduction, of the amount of payments to aggrieved borrowers because of any debts owed by those persons.  Provident also shall not object or refuse to make a payment based on a release of legal claims or loan modification previously signed by any such aggrieved borrowers.

**G.     Evaluating and Monitoring Compliance**

35.     For the duration of this Order, Provident shall retain all records relating to its obligations under this Order as well as its compliance activities as set forth herein.  Plaintiffs shall have the right to receive such records upon request.

36.     For the duration of this Order, Provident shall provide Plaintiffs the periodic reports of its fair lending analyses and remediation actions, pursuant to Paragraphs 14-18.  In addition to these reporting requirements, Provident shall submit a report to Plaintiffs within six months of the effective date of this Order regarding its progress in establishing and implementing each of the remedial items specified in this Order and set forth in the Action Plan.  A second report shall be submitted to Plaintiffs on the first anniversary of this Order.  Thereafter, Provident shall submit a report annually to Plaintiffs for the term of the Order describing the actions taken in compliance with the provisions of the Order and set forth in the Action Plan.  The report shall include an objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting the goal for that year, and any recommendations for additional actions to achieve the goals of this Order.  If applicable, Provident shall attach to the annual reports representative copies of training material disseminated pursuant to this Order.  In addition, Provident shall annually provide to Plaintiffs, on the anniversary of the date of entry of this Order, an electronic database that contains all the mortgage loan-related data that it is required to submit pursuant to HMDA, supplemented by data that identifies the broker for each loan, the amount of fees paid to each broker (specify whether borrower-paid or lender-paid), and the total net amount paid to a broker for each loan.

**H.     Administration**

37.     This Order is binding on Provident, including all of its officers, employees, agents, representatives, assignees, successors in interest, and all those in active concert or participation with any of them.  In the event Provident seeks to transfer or assign all or part of its mortgage lending

operations during the term of this Order, and the successor or assignee intends to carry on the same or similar business practices, as a condition of sale, Provident shall obtain the written agreement of the successor or assignee to any obligations remaining under the Order for its remaining term.

38.    This Order shall terminate ninety (90) days after the submission of Provident's fourth annual report to the Plaintiffs pursuant to Paragraph 36.  Notwithstanding this provision, the term of this Order may be extended by agreement of the parties or upon motion to the Court by the Plaintiffs, for good cause shown.

39.    Any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties.  Additionally, details related to administration of the Settlement Fund as set forth in Paragraphs 22-34 may be modified by written agreement of the parties and without further Court approval.  Any other modifications to this Order may be made only upon approval of the Court, upon motion by any party.

40.    In the event that any disputes arise about the interpretation of or compliance with the terms of this Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution.  The parties agree that if any party reasonably believes that another party failed to comply with any obligation under this Order, it shall provide written notice thereof and allow a period of at least thirty (30) days to discuss a voluntary resolution of the alleged violation before presenting the matter to this Court.  In the event of either a failure by Provident to perform in a timely manner any act required by this Order or an act by Provident in violation of any provision hereof, Plaintiffs may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

41.    Nothing in this Order shall excuse Provident's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over Provident that imposes additional obligations on it.

42.    The parties agree that, as of the date of the entry of this Order, litigation is not "reasonably foreseeable" concerning the matters described above.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such

1  litigation hold.  Nothing in this Paragraph relieves any party of any other obligations imposed by this

2  Order or any record retention obligations imposed by statute or regulation.

3       43.    Provident's compliance with the terms of this Order, including any modifications

4  agreed to by the parties or ordered by the Court, shall fully and finally resolve all claims of Plaintiffs

5  arising prior to the effective date of this Order relating to the alleged violation of the fair lending laws

6  by means of discriminating on the basis of race and national origin, as alleged in the Complaint in this

7  action, including all claims for equitable relief and monetary damages and penalties.  This Consent

8  Order does not release claims for practices not addressed in the Complaint's allegations, or that were

9  not within the subject matter of Plaintiffs' investigation, including claims that may be held or are

10  currently under investigation by any federal agency, or any claims that may be pursued for actions that

11  may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal

12  Banking Agency, as defined in 12 U.S.C. § l8l3(q), against Provident or any of its affiliated entities.

13       44.    Each party to this Consent Order shall bear its own costs and attorney's fees associated

14  with this litigation.

15       45.    This Court, the Northern District of California, shall retain jurisdiction for the duration

16  of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed

17  with prejudice.

18       IT IS SO ORDERED, this ___18th___ day of ___June___ 2015.

19

20

21                     United States Magistrate Judge

22

23                     Judge Donna M. Ryu

24

25

26

27

28

1 | The undersigned hereby apply for and consent to the entry of the Order:

2 | For the United States:

3 | MELINDA HAAG
United States Attorney
4 | Northern District of California

VANITA GUPTA
Principal Deputy Assistant Attorney
General
Civil Rights Division

5

6

7 | _____
ALEX G. TSE
8 | Chief, Civil Division
MELANIE PROCTOR
9 | Assistant United States Attorney
450 Golden Gate Avenue
10 | San Francisco, 94102

_____
STEVEN H. ROSENBAUM
Chief

11

12 | _____
COTY R. MONTAG
Deputy Chief

13

14 | _____
BURTIS M. DOUGHERTY
15 | Trial Attorney
Housing and Civil Enforcement Section
16 | Civil Rights Division
United States Department of Justice
17 | 950 Pennsylvania Ave., N.W. – NWB
Washington, DC 20530

18

19

For the Consumer Financial Protection Bureau:

20 | PATRICE ALEXANDER FICKLIN
21 | Fair Lending Director

22 | REBECCA J. K. GELFOND
Deputy Fair Lending Director

23

24 | _____
25 | VINCENT HERMAN
Senior Fair Lending Enforcement Counsel
26 | BENJAMIN KONOP
Enforcement Attorney
27 | Consumer Financial Protection Bureau
1700 G Street NW
28 | Washington, DC 20552

Consent Order                          - 19 -

1

2   For Defendant Provident Funding Associates, L.P.:

3

4   R. Craig Pica
    Chief Executive Officer
5

6

7

8   Neil R. O'Hanlon, Esq.
    Timothy P. Tobin, Esq.
9   J. Evans Rice, Esq.
    Hogan Lovells, US LLP
10  1999 Avenue of the Stars, Suite 1400
    Los Angeles, CA  90067
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A

**We do Business in Accordance with
Federal Fair Lending Laws**

**UNDER THE EQUAL CREDIT OPPORTUNITY
ACT, IT IS ILLEGAL TO DISCRIMINATE IN ANY
CREDIT TRANSACTION:**

**On the basis of race, color, national origin, religion,
sex, marital status, or age;**

**Because income is from public assistance; or**

**Because a right has been exercised under the Federal
Consumer Credit Protection Laws.**

**IF YOU BELIEVE YOU HAVE BEEN
DISCRIMINATED AGAINST, YOU SHOULD SEND
A COMPLAINT TO ONE OF THE FOLLOWING:**

| | |
|---|---|
| **U.S. Department of Justice**<br>**Civil Rights Division**<br>**Housing and Civil Enforcement**<br>**  Section**<br>**Washington, DC 20530**<br>**1-800-896-7743**<br>**http://www.usdoj.gov/crt/housing** | **Consumer Financial Protection Bureau**<br>**P.O. Box 4503**<br>**Iowa City, Iowa 52244**<br>**(855) 411-CFPB (2372)**<br>**(855) 729-CFPB (2372) (TTY/TDD)**<br>**www.consumerfinance.gov** |

**Federal Trade Commission
Washington, DC 20580
(202) 326-2222
https://www.ftccomplaintassistant.gov/**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>APPENDIX B</u>**

<u>Officer and Employee Acknowledgement</u>

I acknowledge that on _____, I was provided copies of the Consent Order entered by the Court in <u>United States and Consumer Financial Protection Bureau v. Provident Funding Associates, L.P.</u> (N.D. Cal.), and the loan policies developed pursuant thereto.  I have read and understand these documents and have had my questions about these documents answered.  I believe I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Date

## **APPENDIX C**

### Officer and Employee Training Certification

I certify that on _____, I received training with respect to my responsibilities under the Consent Order entered by the Court in United States and Consumer Financial Protection Bureau v. Provident Funding Associates, L.P. (N.D. Cal.), and the federal fair lending laws. I have had the opportunity to have my questions about them answered.  I believe I understand my legal responsibilities not to discriminate under the federal fair lending laws, including the Fair Housing Act and Equal Credit Opportunity Act, and shall comply with those responsibilities.


_____
Signature

_____
Print Name

_____
Job Title

_____
Date

**<u>APPENDIX D</u>**

<u>Release of Claims</u>

In consideration for the parties' agreement to the terms of the Consent Order entered in <u>United States of America and Consumer Financial Protection Bureau v. Provident Funding Associates</u>, Case No. [###] (N.D. Ca. ##, 2015) (the "Action"), and the payment to me of at least $[initial payment amount] related to the loan(s) listed on this form, pursuant to the Consent Order, I hereby release and forever discharge all claims of every type accruing prior to the entry of the Consent Order, related to the allegations in the Action, including without limitation the claim that African-American and Hispanic borrowers were charged higher broker fees for residential real estate-related loans than non-Hispanic white borrowers because of their race and national origin.  This release includes all such claims, known or unknown, suspected or unsuspected, that I may have against Provident Funding Associates, L.P., all related entities, parents, predecessors, successors, subsidiaries, and affiliates, and all of their past and present directors, officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors, administrators, successors, or assigns.  I acknowledge that I am aware that I may discover facts in addition to, or materially different from, those facts which I now know or believe to be true with respect to the subject matter of this release, but that I release fully, finally and forever all claims related to the allegations in the Action, notwithstanding the discovery or existence of any such additional or different facts.


To be completed by the settlement administrator:


Loan Number: _____          Property Address: _____
_____

Origination Date: _____          Borrowers Name(s): _____
_____


To be completed by borrower(s):


_____
Signature(s)


_____          _____

Print Name(s)                                                      Date